**State**

**v.**

**Owens**

*[Cite as 2 AOA 343]*

*Case No. 56577*
*Cuyahoga County, (8th)*
*Decided March 1, 1990*

*6th Amend U.S. Const.*
*R.C. 2905.01*
*R.C. 2907.02*

John T. Corrigan, Esq. Cuyahoga County, Prosecutor George J. Sadd, Esq., Assistant County Prosecutor, Justice Center - 8th Floor 1200 Ontario Street Cleveland, OH 44113, For Plaintiff-Appellee.

Warren McClelland, Esq. Public Defender's Office, Marion Building, Room 307, 1276 West Third Street Cleveland, OH 44113, For Defendant-Appellant.

MATIA, J.

Defendant-appellant, Wilford Owens, appeals from his conviction for one count of kidnapping and four counts of rape.

### I.  THE FACTS
### A.  THE INDICTMENT

On October 2, 1986, the appellant was indicted by the Grand Jury of Cuyahoga County for two counts of kidnapping in violation of R.C. 2905.01 and counts of rape with a violence specification in violation of R.C. 2907.02.

### B.  THE ARRAIGNMENT

On January 12, 1987, the appellant was arraigned wherein a plea of not guilty was entered to all six counts of the indictment.

### C.  THE JURY TRIAL AND VERDICT

On October 20, 1987, a jury trial was commenced with regard to all six counts of the indictment. At the close of the state of Ohio's case-in-chief, the trial court granted the appellant's Crim. R. 29(A) motion for acquittal and dismissed the second count (kidnapping) of the indictment. On October 22, 1987, the jury returned a verdict of guilty as to the one count of kidnapping and guilty as to the four counts of rape.

### D.  THE APPELLANT'S FIRST MOTION FOR NEW TRIAL

On November 3, 1987, the appellant filed a motion for new trial pursuant to Crim R. 33. This motion for new trial was filed by appellant's original defense counsel and was premised upon newly discovered evidence vis-a-vis the boyfriend of the victim.

The trial court upon completion of an oral hearing, denied the appellant's first motion for new trial.

### E.  THE APPELLANT'S SECOND MOTION FOR NEW TRIAL

On February 12, 1988, the appellant filed a second motion for new trial pursuant to Crim. R. 33. This second motion for new trial, as filed by newly retained counsel, was also premised upon newly discovered evidence which had not been presented at trial.

Once again, the trial court denied the appellant's second motion for new trial upon completion of an oral hearing.

### F.  THE SENTENCE OF THE TRIAL COURT

On August 29, 1988, the trial court sentenced the appellant to incarceration within the Correctional Reception Center, Orient, Ohio, for a term of five years to twenty-five years with regard to each count of rape and three years to fifteen  years with regard to the  one count of

kidnapping. The trial court further ordered that the terms of incarceration run concurrent with each other.

### G. THE APPELLANT'S APPEAL

Thereafter, the appellant timely brought the instant appeal from his conviction for one count of kidnapping and four counts of rape.

In order to facilitate the instant appeal, this court shall initially examine the appellant's third assignment of error (ineffective assistance of counsel) and then proceed to an examination of the appellant's first assignment of error (manifest weight) and the appellant's second assignment of error (denial of the first motion for new trial).

### II. THE APPELLANT'S THIRD ASSIGNMENT OF ERROR

The appellant's third assignment of error is that:

"THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

### A. ISSUED RAISED: APPELLANT DENIED EFFECTIVE ASSISTANCE OF COUNSEL

The appellant, in his third assignment of error, argues that he was denied effective assistance of counsel during the course of trial and subsequent to trial through newly retained counsel. Specifically, the appellant argues two claims of ineffective assistance of counsel: 1) failure of defense counsel to call known witnesses at trial in order to impeach the credibility of the victim; and 2) the failure of newly retained counsel to file a post-conviction motion for relief premised upon ineffective assistance of counsel.

This assignment of error is well taken.

### B. STANDARD OF REVIEW FOR CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

In order to substantiate a claim of ineffective assistance of counsel, the appellant must demonstrate that his counsel deprived him of a fair trial. The appellant must demonsrate that: 1) defense counsel's performance at trial was seriously flawed and deficient; and 2) the result of the trial would have been different if defense counsel had provided proper representation at trial. *Strickland* v. *Washington* (1984), 466 U.S. 668; *State* v.*Brooks* (1986), 25 Ohio St. 3d 144.

A presumption that a properly licensed attorney executes his legal duty in an ethical and competent manner must be applied to any claim of ineffective assistance of counsel. *State* v. *Smith* (1985), 17 Ohio St. 3d 98; *Vaughn* v. *Maxwell* (1965), 2 Ohio St. 2d 299. In addition, this court must ordinarily accord deference to defense counsel's strategic choices made during trial and cannot examine the strategic choices of counsel through hindsight. *Strickland* v. *Washingtion, supra,* at 689.

As previously stated, the appellant has raised two claims of ineffective assistance of counsel. Each of these two claims of ineffective assistance of counsel shall be independently examined in order to facilitate the instant appeal.

### C. APPELLANT'S FIRST CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL: FAILURE TO CALL WITNESSES DURING TRIAL

The appellant's first claim of ineffective assistance of counsel involves the failure of defense counsel to call six known witnesses on behalf of the appellant during the course of trial. Appellant argues that the testimony of these six known witnesses would have substantially and materially corroborated the appellant's innocence.

### 1. CALLING OF A WITNESS IS NORMALLY A TRIAL STRATEGY

This court has held that the decision to call a witness during the course of trial is a matter of trial tactics and strategy and thus the failure to call a witness will not automatically result in a finding of ineffective assistance of counsel. The basis for this holding involves the general inability of a reviewing court to speculate as to what a potential witness might have stated during trial or how the additional evidence would have affected the jury verdict.

Shepeard also complains that counsel failed to call certain witnesses whose testimony would have supported his innocence. The decision to call a witness is within the realm of trial tactics. *State* v. *Hurt* (1984), 20 Ohio App. 3d 310; *Griggs, supra.* No evidence on the record indicates that this decision prejudiced the defendant. Speculation as to what a witness might have said and how it would have effected the outcome is not a proper function for the reviewing court. See *State* v. *Kolasa* (May 19, 1987), Cuyahoga App. No. 511[5]8, unreported." *State* v. *Shepeard* (September 14, 1989), Cuyahoga App. No. 55844, unreported, at 6.

### 2. ON REVIEW: NO SPECULATION AS TO

### TESTIMONY OF UNCALLED WITNESSES

In the case *sub judice,* however, this court is not required to speculate as to what six additional witnesses might have stated sat trial vis-a-vis the testimony of the six potential witnesses as adduced at the oral hearings held in relation to the appellant's first and second motions for new trial. In addition, it is clear that the additional testimony of these six witnesses was material and would have directly affected the jury of the verdict. In order to evaluate the effect of the failure of defense counsel to call six witnesses during trial, it is necessary to initially examine the testimony adduced at trial.

### 3. TESTIMONY AND EVIDENCE ADDUCED AT TRIAL BY STATE OF OHIO

The state of Ohio, in attempting to prove the charges of kidnapping and rape, received testimony from six witnesses. A review of the record, however, reveals that only the testimony of the victim was directly related to proof of the charges of kidnapping and rape.

The following testimony was adduced on behalf of the state of Ohio:

A) Cynthia Ann Turner, the victim, testified that:

"1) Cynthia Turner initially met the appellant in April of 1986 at the home of Cynthia Gordon (Tr. 13);

"2) the appellant asked Cynthia Turner if she would like a career in modeling (Tr. 13, 14);

"3) the appellant photographed Cynthia Turner (Tr. 17);

"4) Cynthia Turner and her daughter moved into the appellant's home in May of 1986 (Tr. 20);

"5) the appellant made sexual advances toward Cynthia Turner  (Tr. 22);

"6) Cynthia Turner was never left alone but always remained in the presence of the appellant (Tr. 23);

"7) the appellant had sexual intercourse with Cynthia Turner  every day for a period of approximately four months (Tr. 25);

"8) the appellant threatened Cynthia Turner's daughter (Tr. 25);

"9) Cynthia Turner left the appellant's home in July of 1986 (Tr. 37); and

"10) Cynthia Turner could not leave the appellant's home because of special locks on the door of the appellant's home" (Tr. 40).

B) Cynthia Gordon, an acquaintance of the victim, testified  that:

"1) Cynthia Gordon knew Cynthia Turner for a period of three and one-half years (Tr. 92);

"2) the appellant came to Cynthia Gordon's home in April of 1986 and met Cynthia Turner (Tr. 93);

"3) the appellant asked Cynthia Turner if she desired to be a model (Tr. 94); and

"4) Cynthia Gordon did not see Cynthia Turner after the move to the appellant's home" (Tr. 98).

C) Frances Turner, the mother of Cynthia Turner, testified  that:

"1) Frances Turner met the appellant in April of 1986 (Tr. 114).

"2) Frances Turner did not like Cynthia Turner living with the  appellant (Tr. 118);

"3) Frances Turner did not see her granddaughter, the daughter  of Cynthia Turner, often (Tr. 121); and

"4) the son of Frances Turner, Randolph Turner, picked up the  daughter of Cynthia Turner on July 4, 1986 for the purpose of a party" (Tr. 123).

D) Randolph Turner, the brother of Cynthia Turner, testified  that:

"1) Randolph Turner met the appellant in April of 1986 (Tr. 151);

"2) Randolph Turner traveled to the appellant's home to pick  up Cynthia Turner's daughter (Tr. 152);

"3) Cynthia Turner did not come to the party of July 4, 1986" (Tr. 154).

E) Emily Broder, a Cleveland police officer, tesitified that:

"1) Cynthia Turner was interviewed on July 29, 1986 at the Y.W.C.A. Women's Shelter (Tr. 165); and

"2) a rape report was filled out by Cynthia Turner" (Tr. 166).

F) Mark Hastings, a Cleveland police officer, testified that:

"1) Cynthia Turner was interviewed on July 31, 1986 at a women's shelter (Tr. 168); and

"2) Mark Hastings had no firsthand knowledge of the events of April, May, June, or July of 1986" (Tr. 169).

As can be seen, only the testimony of the victim, Cynthia Turner, was directly related to proof of the pending charges of rape and kidnapping. It should be also noted that no medical records, which corroborated the rape of Cynthia Turner, were admitted at trial.

### 4.  TESTIMONY AND EVIDENCE ADDUCED AT TRIAL BY APPELLANT

The appellant, in an attempt to establish his innocence, presented testimony from only

three witnesses. The following testimony was adduced at trial on behalf of the appellant:

A) Irma Bryant, the appellant's sister, testified that:

"1) Irma Bryant visited the appellant's home frequently during the months of April, May, June and July of 1986 (Tr. 173, 174);

"2) Irma Bryant was acquainted with Cynthia Turner (Tr. 174);

"3) Irma Bryant visited the appellants home when Cynthia Turner and her daughter were alone (Tr. 175); and

"4) when visiting the appellant's home, Cynthia Turner would open the front door" (Tr. 176).

B) Patricia Owens, the appellant's husband, testified that:

"1) Cynthia Turner was "kicked out" of her former home by her mother (Tr. 188);

"2) Cynthia Turner was not a prisoner and that Cynthia turner possessed her own set of keys to the appellant's home (Tr. 189); and

"3) Cynthia Turner was free to use the telephone (Tr. 189); and

"4) Cynthia Turner was present in the appellant's home when both the appellant and Patricia Owens were at work" (Tr. 191).

C) Wilford Owens, the appellant, testified that:

"1) the appellant had no sexual relations with Cynthia Turner (Tr, 223);

"2) the appellant did not keep Cynthia Turner a prisoner nor was she tortured (Tr. 224);

"3) Cynthia Turner was free to leave the appellant's home whenever she desired" (Tr. 224).

## 5. TESTIMONY ADDUCED AT TRIAL ESSENTIALLY INVOLVE CREDIBILITY OF WITNESSES

A review of the record of the trial clearly demonstrates that the evidence adduced at trial essentially involved the testimony of Cynthia Turner pitted against the testimony of the appellant with regard to whether Cynthia Turner was kidnapped and raped. The central question thus presented to the jury involved the credibility of Cynthia Turner versus the credibility of the appellant.

Absent medical records to substantiate a claim of rape or the existence of an individual who has witnessed the heinous act of rape, proof of the offense of rape, as well as kidnapping, devolves to the issue of the credibility of the victim versus the credibility of the defendant. Such is the case herein.

As will be addressed through an examination of the appellant's first assignment of error, the issue of the credibility of a witness is ordinarily a matter for consideration by the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 231. However, the failure of defense counsel to present at trial evidence which would materially challenge the credibility of an alleged rape victim effectively negates the ability of the trier of fact to reasonably and fairly determine the credibility of the rape victim and in turn deliver a fair and impartial verdict. This court must therefore determine whether the testimony of six additional witnesses would have challenged the credibility of the rape victim and also affect the verdict of the jury.

## 6. POTENTIAL TESTIMONY OF SIX ADDITIONAL WITNESSES FOR APPELLANT

During oral hearings conducted by the trial court with regard to the appellant's two motions for new trial, testimony was adduced from six potential witnesses who could have testified at the appellant's original trial. The following testimony was adduced at the oral hearings:

A) Anthony Johnson, the former boyfriend of Cynthia Turner, testified that:

"1) Anthony Johnson and Cynthia Turner initially met in 1984 (Tr. 307);

"2) Cynthia Turner never mentioned that she was kidnapped (Tr. 309);

"3) Cynthia Turner filed criminal assault charges against Anthony Johnson in May of 1986 which were subsequently dropped at the request of Cynthia Johnson (Tr. 309, 310);

"4) Cynthia Johnson, once again on May of 1987, filed criminal charges of intimidation of a witness against Anthony Johnson (Tr. 310);

"5) Cynthia Turner appeared in court and admitted that the charges of intimidation of a witness were false and that the charge was a result of anger, jeolousy, and revenge (Tr. 310, 311);

"6) Cynthia Turner is not a truthful person (Tr. 312);

"7) Anthony Johnson was unable to appear at the appellant's initial trial as a result of being held in jail on the charge of intimidation of a witness as filed by Cynthia Turner (Tr. 313);

"8) Cynthia Turner wanted the appellant in jail (Tr. 350); and

"9) Cynthia Turner had two or three contacts with Anthony Johnson while living at the appellant's home (Tr. 350).

B) Lorine Owens, the mother of the appellant, testified that:

"1) Lorine Owens visited the appellant's home in June of 1986 (Tr. 335);

"2) Cynthia Turner and her baby were living at the appellant's home during the visit of Lorine Owens (Tr. 336);

"3) Cynthia Turner and her baby remained at the appellant's home while the appellant and his wife worked during the day (Tr. 336);

"4) the appellant's home did not have bars on the windows (Tr. 337);

"5) Cynthia Turner was free to leave the appellant's home and use the telephone (Tr. 337);

"6) Cynthia Turner confided to Lorine Owens that she had problems with her mother (Tr. 339); and

"7) appellant's trial lawyer stated that the testimony of Lorine Owens was not necessary at trial (Tr. 341).

C) Deseray Stewart, a co-worker of the appellant's wife, testified that:

"1) Deseray Stewart worked with the appellant's wife at Sister's Chicken (Tr. 343);

"2) the appellant's home did not have bars on the windows nor were any special locks installed on the doors (Tr. 345);

"3) Cynthia Turner was frequently observed sitting on the appellant's front porch with the front door open (Tr. 345); and

"4) Deseray Stewart was not summoned to testify by trial counsel (Tr. 346).

D) Elizabeth Roundtree, an acquaintance of the appellant, testified that:

"1) Cynthia Turner was observed alone in the appellant's home (Tr. 353);

"2) no barricades or bars were present on the windows in the appellant's home (Tr. 354); and

"3) Elizabeth Roundtree was not summoned to testify by trial counsel (Tr. 355).

E) Kenneth Hall, a neighbor of the appellant, testified that:

"1) Cynthia Turner was observed walking down the street with her baby outside the presence of the appellant (Tr. 358, 359);

"2) Kenneth Hall was not summoned to testify by trial counsel (Tr. 359).

F) Joseph Simpson, an acquaintance of the appellant, testified that:

"1) Joseph Simpson had visited the appellant's home and had observed Cynthia Turner (Tr. 362);

"2) no evidence that Cynthia Turner was restrained (Tr. 362); and

"3) Joseph Simpson was not summoned to testified by trial counsel (Tr. 363).

It should also be noted that the wife of the appellant testified during the course of the oral hearing, with regard to the second motion for new trial, and stated that:

"1) appellant's trial counsel was informed of the availability of the aforesaid six additional witnesses (Tr. 377);

"2) appellant's trial counsel responded that extra witnesses were not required (Tr. 377); and

"3) appellant's trial counsel stated that the case was "under control, a piece of cake, a ha-ha case" (Tr. 377).

7. ANALYSIS OF CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL VIS-A-VIS FAILURE TO CALL WITNESSES

This court is aware that the sheer quantity of witnesses presented on behalf of a defendant will not automatically impugn the credibility of a state's witness nor establish the innocence of a defendant. However, in the case *sub judice,* the existence of six witnesses in conjunction with the quality of the testimony of these six witnesses casts an ever increasing doubt upon the credibility and veracity of the state's chief witness, Cynthia Turner. Cf. *State* v. *Abi-Sarkis* (1988), 41 Ohio App. 3d 333.

As previously stated, a claim of ineffective assistance of counsel requires demonstration that:

"1) defense counsel's performance at trial was seriously flawed and deficient; and 2) the result of the trial would have been different had defense counsel provided proper representation at trial. *Strickland* v. *Washingtion, supra; State* v. *Brooks* (1986), 25 Ohio St. 3d 144. Both prongs of the *Strickland* test have been met in the present appeal.

The failure of defense counsel to challenge the credibility of the state's chief witness, Cynthia Turner, through the testimony of six additional witnesses was more than mere trial tactics or strategy. The failure of defense counsel to call Lorine Owens, Deseray Stewart, Anthony Johnson, Elizabeth Roundtree, Kenneth Hall, and Joseph Simpson on behalf of the appellant was clearly indicative of a flawed and deficient performance. In addition, there is a reasonable probability that the testimony of the additional witnesses would have resulted in a different verdict on the part of the dury.

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington, supra,* at 2068.

Therefore, we find that the appellant was not provided with effective assistance of counsel during the course of trial and the appellant's first claim of ineffective assistance of counsel is well taken.

#### D. APPELLANT'S SECOND CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL: FAILURE OF SECOND COUNSEL TO FILE MOTION FOR POST-CONVICTION RELIEF

The appellant's second claim of ineffective assistance of counsel involves the failure of appellant's second counsel to file a post-conviction relief motion. The appellant argues that second counsel should have filed a post-convition relief motion instead of a second motion for new trial.

The fact that appellant's second counsel filed a second motion for new trial, which was denied by the trial court, did not nor does it prevent the appellant from filing a motion for post-conviction relief. Thus, the appellant was not prejudiced and we find no merit in the appellant's second claim of ineffective assistance of counsel.

#### E. CONCLUSION

Based upon the failure of original trial counsel to call six additional witnesses on behalf of the appellant during the course of trial, the appellant's third assignment of error is well taken.

### III. THE APPELLANT'S FIRST ASSIGNMENT OF ERROR

The appellant's first assignment of error is that:

"THE VERDICT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE."

#### A. ISSUE RAISED: JURY VERDICT IS AGAINST MANIFEST WEIGHT OF EVIDENCE

The appellant, in his initial assignment of error, argues that the jury's verdict was against the manifest weight of the evidence. Specifically, the appellant argues that the evidence adduced at trial on behalf of the state of Ohio was contradictory, extremely uncertain, and conflicting and thus did not support the jury verdict.

This assignment of error, *as based solely upon the evidence adduced during the course of trial,* is not well taken.

#### B. STANDARD OF REVIEW FOR

#### MANIFEST WEIGHT

The weight of the evidence and the credibility of witnesses are primarily matters for consideration by the trier of fact. *State* v. *DeHass, supra.* Upon review, this court will not reverse a verdict where there is some evidence upon which the trier of fact could reasonably conclude that all the elements of the offense have been proven beyond a reasonable doubt. *State* v. *Eley* (1987), 58 Ohio St. 2d 169; *State* v. *Gaston* (Jan. 11, 1979), Cuyahoga App. No. 37846, unreported.

#### C. ANALYSIS

Based upon the evidence adduced at trial, and without the benefit of the additional six witnesses which defense counsel failed to call during trial, this court finds that some evidence was adduced at trial to establish the elements of the offenses of kidnapping and rape. Absent the aforesaid additional testimony, it cannot be stated that the jury lost its way or that the evidence weighed heavily against the appellant's conviction. *State* v. *Abi-Sarkis, supra; State* v. *Marlin* (1983), 20 Ohio App. 3d 172.

Therefore, based solely upon the evidence adduced at trial, the appellant's first assignment of error is not well taken.

### IV. THE APPELLANT'S SECOND ASSIGNMENT OF ERROR

The appellant's second assignment of error is that:

"THE TRIAL COURT COMMITTED ERROR AND ABUSE OF DISCRETION BY OVERRULING DEFENDANT'S FIRST MOTION FOR NEW TRIAL."

#### A. ISSUE RAISED: TRIAL COURT ERRED IN DENYNG FIRST MOTION FOR NEW TRIAL

The appellant, in his second assignment of error, argues that the trial court abused its discretion in denying the *first* motion for new trial. Specifically, the appellant argues that the first motion for new trial should have been granted on the basis of newly discovered evidence vis-a-vis the testimony of Anthony Johnson, the former boyfriend of Cynthia Turner. The newly discovered evidence involved Anthony Johnson's relationship with Cynthia Turner and the conduct of Cynthia.

This assignment of error is not well taken.

#### B. CRIM. R. 33(A)(6) AND MOTION FOR NEW TRIAL

Crim. R. 33(A)(6), which deals with newly discovered evidence as a ground for a new trial, provides that:

"(6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses."

## C. STANDARD OF REVIEW FOR MOTION FOR NEW TRIAL PREMISED ON NEWLY DISCOVERED EVIDENCE

The Supreme Court of Ohio, with regard to the standard to be applied to a motion for new trial based upon newly discovered evidence, stated that:

"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. ***" *State* v. *Petro* (1974), 148 Ohio St. 505, syllabus.

## D. ANALYSIS

A review of the record herin fails to disclose that a *diligent* effort was made on the part of defense counsel to locate the whereabouts of Anthony Johnson during the course of trial. The record indicates that defense counsel failed to enlist the resources of the court and the state of Ohio in an effort to obtain the attendance of Anthony Johnson at trial. *State* v. *Shepard* (1983), 13 Ohio App. 3d 117.

Thus, the trial court did not error or abuse its discretion by denying the appellant's first motion for new trial and the appellant's second assignment of error is not well taken.

Based upon this court's finding of error with regard to the appellant's claim of ineffective assistance of counsel, the appellant's conviction is reversed and the matter is remanded for a new trial.

*Judgment reversed and cause remanded.*

JOHN V. CORRIGAN, P.J., and *PARRINO, J., Concur.

*SITTING BY ASSIGNMENT:
JUDGE THOMAS J. PARRINO, Retired, of the Eighth Appellate District.