**BAILEY, Appellee,**

**v.**

**OHIO DEPARTMENT OF TRANSPORTATION et al., Appellants.**

[Cite as *Bailey v. Ohio Dept. of Transp.*, 169 Ohio App.3d 538, 2006-Ohio-6023.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87619.

Decided Nov. 16, 2006.

Jim Petro, Attorney General, and Jack W. Decker and Mahjabeen Qadir, Assistant Attorneys General, for appellant the Ohio Department of Transportation.

Sandra F. Bell, for appellant the Ohio Civil Service Employees Association.

Edwin David Bailey, pro se.

MARY EILEEN KILBANE, Judge.

{¶ 1} Appellants, Ohio Department of Transportation ("ODOT"), its director, Gordon Proctor, and its labor relations officer, Jim Miller, appeal the trial court's decision to vacate an arbitration award entered on September 23, 1999. Appellants argue that the trial court lacked subject-matter jurisdiction, that appellee, Edwin David Bailey, lacked standing to sue, that the trial court erred when it ordered a nonparty to conduct a new arbitration hearing, and that the trial court erred when it concluded that ODOT procured the settlement agreement, which was the basis of the arbitration award, by exerting undue influence over Bailey. For the following reasons, we vacate the trial court's decision.

{¶ 2} Bailey worked for ODOT as a highway worker from 1980 until 1999. During that time, Bailey served as a union steward for the Ohio Civil Service Employees Association, Local 11, AFSCME ("OCSEA"). As a union steward, Bailey received steward training that familiarized him with OCSEA's collective-bargaining agreement and the grievance process.

{¶ 3} Between 1995 and 1998, ODOT disciplined Bailey multiple times and Bailey signed several grievance-settlement agreements. In July 1998, ODOT terminated Bailey's employment after he allegedly applied for sick leave under false pretenses and for unauthorized absence.

{¶ 4} Bailey filed a grievance regarding his termination, and arbitrator Sandra Mendel mediated the dispute in January 1999. The parties were unable to come to a resolution, and the case proceeded to arbitration. In June 1999, OCSEA staff representative Peggy Tanksley told Bailey that Anna Smith would arbitrate his grievance on July 15, 1999. In late July or early August, Lynn Kemp, another OCSEA staff representative, told Bailey that the arbitration had been postponed and that Dr. David Pincus had replaced Anna Smith as the arbitrator. Bailey told Lynn Kemp that he strongly disapproved of having Dr. David Pincus arbitrate the matter because, as Bailey alleged, Dr. David Pincus "coerced" an earlier settlement between himself and ODOT on April 23, 1998.

{¶ 5} ODOT rescheduled the arbitration for September 23, 1999, and set the State Highway Patrol office in Garfield Heights, Ohio, as the location of the arbitration. On September 20, 1999, Bailey filed a criminal charge for false imprisonment against Matthew Long, an ODOT investigator. Matthew Long investigated Bailey in June 1998 to determine whether Bailey was improperly using his sick time.

{¶ 6} On September 23, 1999, Bailey and his wife Jamie were accompanied to the arbitration by his psychologist Dr. Alice Neuman, union steward Dan Johnson, and OCSEA staff representative Lynn Kemp. ODOT's assistant labor-relations administrator Ed Flynn, ODOT District 4 labor-relations officer Greg

Zemla, and others were present on behalf of ODOT. Bailey stated that he did not want to participate in the arbitration if Dr. David Pincus was the arbitrator. Bailey also stated that because the arbitration was being held in a state facility with uniformed and armed officers present, he feared that if he did not agree to something during the arbitration he would be arrested.

{¶ 7} The arbitration began with Dr. David Pincus asking ODOT and Lynn Kemp if settlement was possible. Acting as the intermediary, Lynn Kemp met with Bailey and his party in one room, and then went to a separate room to relay Bailey's demands to ODOT, and then returned to Bailey to report ODOT's demands. After lengthy "shuttle diplomacy," the parties eventually agreed to settle the grievance for $15,000. Before the parties signed the agreement, representatives from ODOT told Lynn Kemp that they would pay Bailey an additional $2,000 if he agreed to drop the criminal charges against Matthew Long. Bailey agreed.

{¶ 8} The final agreement provided that Bailey would resign effective September 23, 1999, with the period between the discharge and resignation treated as administrative leave without pay; that prospective employers would receive a neutral reference; that Bailey would receive a lump-sum payment of $17,000; and that ODOT would not oppose Bailey's application for disability retirement. Bailey signed the "waiver of individual rights" clause contained in the settlement agreement and submitted his resignation. Bailey received disability retirement benefits effective August 1, 1998.

{¶ 9} On December 20, 1999, Bailey filed an action for unfair labor practices with the State Employment Relations Board ("SERB"). Bailey alleged that ODOT and the arbitrator unduly influenced him to settle the matter before reaching actual arbitration of his grievances. SERB dismissed the matter on April 6, 2000, for want of prosecution.

{¶ 10} On December 23, 1999, Bailey filed a pro se complaint in common pleas court pursuant to R.C. 2711.10, naming ODOT, its director Gordon Proctor, and ODOT labor relations officer Jim Miller; as respondents. Bailey sought to vacate the settlement agreement made on September 23, 1999, between ODOT and OCSEA. Bailey later voluntarily dismissed the action without prejudice.

{¶ 11} Bailey refiled the action pursuant to R.C. 2711.10 against the same parties. On August 27, 2001, ODOT moved to dismiss, arguing that Bailey's claim lay within the exclusive jurisdiction of SERB. The trial court agreed and dismissed Bailey's case. Bailey appealed, and this court reversed and remanded, holding that because Bailey's complaint to vacate the arbitration award sounded in undue means, not unfair labor practices, the matter should be heard by the court of common pleas. *Bailey v. Ohio Dept. of Transp.*, Cuyahoga App. No. 80818, 2002-Ohio-6221, 2002 WL 31538807.

{¶ 12} After this court of appeals remanded the case, Bailey filed a motion for declaratory judgment on January 7, 2003. Bailey sought through a declaratory-judgment action to have the common pleas court retry two past grievances in order to modify the award to reinstate him to his former highway worker position and that he be made whole. The trial court overruled Bailey's motion on September 11, 2003. Appellants then moved for summary judgment, which the trial court denied.

{¶ 13} At a pretrial conference held on August 26, 2004, the parties entered into the following stipulation to narrow and define the remaining issues for hearing:

The parties hereby stipulate that the sole purpose of the bench trial is to determine whether the grievance settlement agreement of 9/23/99 was obtained by "undue means."

{¶ 14} The trial court conducted the bench trial on December 20, 2004, and December 21, 2004. On December 12, 2005, the trial court issued its decision, vacating the arbitration award, which it found had been procured through undue means. The court ordered that a new arbitration be conducted between ODOT and OCSEA. Appellants appeal, raising the six assignments of error contained in the appendix to this opinion.

{¶ 15} In their first assignment of error, appellants argue that the trial court lacked subject-matter jurisdiction. Specifically, appellants argue that pursuant to R.C. 5501.22, ODOT and its director may be sued only in the Franklin County Court of Common Pleas. We agree.

{¶ 16} R.C. 5501.22 provides:

The director of transportation shall not be suable * * * in any court outside Franklin County except in actions brought * * * by a property owner to prevent the taking of property without due process of law, in which case suit may be brought in the county where such property is situated * * *.

{¶ 17} Ohio courts have interpreted this statute to mean that the courts of Franklin County have exclusive subject-matter jurisdiction to hear cases involving the director of transportation or the Department of Transportation. *State ex rel. Frinzl v. Ohio Dept. of Transp.* (Feb. 11, 1999), Cuyahoga App. No. 75347, 1999 WL 84073; *Wilson v. Cincinnati* (1961), 172 Ohio St. 303, 16 O.O.2d 71, 175 N.E.2d 725; *Sarkies v. Dept. of Transp.* (1979), 58 Ohio St.2d 166, 12 O.O.3d 174, 389 N.E.2d 491; *Wandling v. Ohio Dept. of Transp.* (1992), 78 Ohio App.3d 368, 604 N.E.2d 825. Additionally, the Ohio Supreme Court specifically found that the joinder of a defendant that is situated in the county where suit is brought does not deprive the directors of the right to invoke the lack of jurisdiction of a court

outside Franklin County. *State ex rel. Braman v. Masheter* (1966), 5 Ohio St.2d 197, 34 O.O.2d 386, 214 N.E.2d 804.

{¶ 18} Appellants also argue that Bailey's case does not fall within the exception of R.C. 5501.22, because it is not "an action to prevent the taking of property without due process of law."

{¶ 19} In response to appellants' arguments, Bailey claims that ODOT consented to jurisdiction in Cuyahoga County and that appellants waived the jurisdictional argument. Bailey points to R.C. 2711.16, which provides that the parties may designate in their arbitration agreement the common pleas court in which an R.C. Chapter 2711 proceeding may be brought. Such "designation is an irrevocable consent to the parties thereto to such jurisdiction." Bailey argues that because ODOT scheduled the arbitration hearing in Cuyahoga County, it consented to jurisdiction of the Cuyahoga County Court of Common Pleas. However, nothing in R.C. 2711.16 provides that scheduling an arbitration proceeding in a county consents to the jurisdiction of that county's courts. Moreover, ODOT conducts activities in all the counties in Ohio. If we were to interpret R.C. 2711.16 in the manner that Bailey suggests, we would render R.C. 5501.22 meaningless.

{¶ 20} Bailey also argues that R.C. 2711.16 is specific, while R.C. 5501.22 is general and, therefore, pursuant to R.C. 1.51, the specific statute prevails. R.C. 1.51 provides that two statutes covering the same subject matter "shall be construed, if possible, so that effect is given to both," but if the statutes still conflict, the specific ordinarily prevails. A reading of both statutes shows no irreconcilable conflict. Bailey could have complied with both statutes by filing suit in Franklin County.

{¶ 21} Finally, Bailey argues that appellants waived their right to argue the jurisdictional issue. However, because R.C. 5501.22 is a jurisdictional statute, the statutory requirement that all actions against ODOT be brought in Franklin County cannot be waived by a party's failure to raise it at or before trial. *State ex rel. Lawrence Dev. Co. v. Weir* (1983), 11 Ohio App.3d 96, 11 OBR 148, 463 N.E.2d 398; *Wandling,* supra.

{¶ 22} In the present case, Bailey sued ODOT, its director Gordon Proctor, and ODOT labor-relations officer Jim Miller in the Cuyahoga County Court of Common Pleas in an attempt to vacate the September 23, 1999 settlement agreement. Therefore, R.C. 5501.22 governed the filing of the claim and required Bailey to file in Franklin County. Additionally, Bailey's case does not fall within the exception of R.C. 5501.22, because it was not an action designed to prevent the taking of property without due process of law. Pursuant to R.C.

5501.22, we conclude that the trial court did not have subject-matter jurisdiction to hear the instant matter and we must vacate the trial court's decision.

{¶ 23} Appellants' first assignment of error is sustained. We find that our discussion of the first assignment of error is dispositive of the entire appeal, rendering appellants' remaining assignments of error moot.

{¶ 24} The judgment of the trial court is vacated.

Judgment vacated.

DYKE, A.J., and CORRIGAN, J., concur.

Appendix

Assignments of Error:

I. The trial court lacked jurisdiction under R.C. 5501.22 because the Ohio Department of Transportation and its Director may be sued only in the Franklin County Court of Common Pleas.

II. The trial court lacked jurisdiction under R.C. 2711.10 because Bailey, failed to present any evidence that any arbitration award was ever rendered, but rather produced evidence of a settlement agreement between his union and the State of Ohio, which was never signed by, issued by, or adopted by any arbitrator.

III. Bailey lacked standing to move to vacate the "arbitration award" or settlement agreement because he was not a "party" to either, but at most, was a party to a waiver of individual rights appended to the agreement between OCSEA and the State.

IV. The trial court erred in "vacating" a settlement agreement to which OCSEA was a party, and in ordering a new "arbitration" to occur between OCSEA and the State of Ohio, in OCSEA's absence when OCSEA was never made a party to the action.

V. The trial court erred in finding that the settlement agreement should be set aside for "undue influence" when (a) although Bailey was not permitted to pick his own arbitrator, no employee has that right under the collective bargaining agreement; and (b) although the agreement contained a term requiring Bailey to withdraw criminal charges, the trial court correctly found this term was added after all the material terms of the settlement agreement had been agreed to. None of these matters constitutes "undue influence" within the meaning of R.C. 2711.10(D) or is sufficient to void any contract.

VI. Even if there was "undue influence" as to the request that Bailey withdraw criminal charges or the waiver of individual rights, those terms were

severable from the remainder of the agreement, and the trial court erred in vacating the entire agreement.